RAPAPORT LAW FIRM, PLLC
Marc A. Rapaport
One Penn Plaza, Suite 2430
New York, NY 10119
Telephone: (212) 382-1600
  *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOEL NUNEZ JIMENEZ, EFRAIN LOPEZ,
JONATHAN VEGA, LEANDRO CALVO,                        Docket No.            (   ) (   )
ALFREDO VILLANUEVA, RUBEN CORREA,                      ECF Case
CARLOS SANCHEZ, JILBER NORALES,
FERNANDO OSORIO, ANGEL COLON, NOEL
CASTILLO, EZEQUIEL NUNEZ, JORGE OLVERA        **COMPLAINT**
a/k/a FRANCISO OLVERA, JUAN SALAS, JESUS
CASTILLO, EFRAIN LEBRON, JOSEPH
LAUBRIEL and JOSE A. PALACIOS, individually,      FLSA COLLECTIVE AND
and on behalf of all others similarly situated,      RULE 23 CLASS ACTION

                          Plaintiffs,

                                                 *Jury Trial Demanded*

                    v.


CHEEVER DEVELOPMENT CORP., SHEER
TAPING, MATTHEW LONUZZI, and ERIC
GRAVES.

                          Defendants.
-----------------------------------------------------------------X


        Plaintiffs JOEL NUNEZ JIMENEZ, EFRAIN LOPEZ, JONATHAN VEGA, LEANDRO

CALVO, ALFREDO VILLANUEVA, RUBEN CORREA, CARLOS SANCHEZ, JILBER

NORALEZ, FERNANDO OSORIO, ANGEL COLON, NOEL CASTILLO, EZEQUIEL

NUNEZ, JORGE OLVERA a/k/a FRANCISCO OLVERA, JUAN SALAS, JESUS CASTILLO,

EFRAIN LEBRON, JOE LUABRIEL, and JOSE PALACIOS (collectively, the "Named

Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, by their attorneys, RAPAPORT LAW FIRM, PLLC, as and for their Complaint, allege as follows:

## PRELIMINARY STATEMENT

1.    The Named Plaintiffs bring this action on behalf of themselves and all other persons similarly situated (hereinafter referred to as the "Class Members," the "Plaintiff Classes" and/or, more specifically, the "FLSA Collective" and the "NYLL/Prevailing Wage Class") who are, or have been, employed by the Defendants as finish workers (painters, tapers, drywall framers, and plasterers) at two publicly-financed, low-income rental housing projects in Bronx County, namely: (a) the 198-unit Serviam Heights senior housing development at 2848 Bainbridge Avenue (the "Serviam Heights Development"); and (b) the two-building housing project located at 280-282 East Burnside Avenue and 2247 Walton Avenue (the "Burnside-Walton Development"). The Serviam Heights Development and Burnside-Walton Development are collectively referred to herein as the "Projects."

2.    The Projects were constructed and developed pursuant to public works contracts, pursuant to which the New York City Housing Development Corporation (HDC) provided financing and subsidies, including, upon information and belief, subsidies and/or tax credits pursuant to HDC's Extremely Low & Low Income Affordability (ELLA) program.  Upon information and belief, financing by the HDC for the Serviam Heights Development included, *inter alia*, $47 million in tax-exempt bonds and $11.9 million from HDC Corporate Reserves.

3.    As a result of this government financing of the Projects and the public purposes that they serve (to wit, providing subsidized and supportive housing for very low income individuals,

formerly homeless individuals, and seniors), workers involved in the construction of the Projects were entitled to be paid prevailing wages and supplements as third party beneficiaries of the contracts and certifications that Defendants were required to execute to serve as general contractor and finish subcontractor, respectively, of the Projects.

4.     As set forth more fully below, the Defendants, all of whom were joint employers of the Named Plaintiffs and Class Members, reaped unlawful profits by colluding to willfully evade and violate their statutory and contractual obligations to pay minimum and overtime wages, as well as prevailing wages, that they were legally obligated to pay to Named Plaintiffs and Class Members.  Through this course of conduct, Defendants were unlawfully and unjustly enriched, to the detriment of Plaintiffs and Class Members, by retaining for their own use funds that were earmarked, by statute and contract, to compensate Named Plaintiffs and Class Members. Defendants' conduct amounts to an enterprise to engage in fraudulent conduct for the purposes of committing and concealing wage theft and demanding extortionate kick-backs as a condition of continued employment.

5.     The Named Plaintiffs seek to remedy, on behalf of themselves and Class Members, violations of: (a) the wage and hour provisions of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201 *et seq.*  ("FLSA"); (b) the wage and hour provisions of the New York Labor Law ("NYLL"); and (c) their rights to prevailing wages and supplements as third-party beneficiaries of contracts applicable to the construction of the Projects.

6.     In their scheme to violate their contractual obligations with public agencies and evade their legal obligations to pay prevailing wages, Defendants falsified business records, including but not limited to time and payroll records relating to the three construction worksites that are the subject of this complaint.  Instead of submitting accurate time and payroll records for

these worksites, Defendants created and submitted falsified records, from which they willfully omitted the names and work hours of construction workers, together with willfully false certifications (conduct amounting to a Class E felony pursuant to NY Labor Law § 220) all in an effort to deceive government agencies, including, upon information and belief, the New York City Comptroller's office.

7.   Plaintiffs also bring this action to recover actual damages, treble damages and punitive damages for violations of the Organized Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations (18 U.S.C. § 1964) ("RICO").

## THE CLASS PERIODS:

8.   The "FLSA Collective" period is designated as the time from February 28, 2015, through the trial date, based upon the allegation that the violations of the FLSA by the Defendants, as described more fully below, have been willful and ongoing since at least the foregoing dates.

9.   The "NYLL/Prevailing Wage Class" period is designated as the time from February 28, 2012, through the trial date, based upon: (a) violations of the NYLL by Defendants' failure to pay minimum and overtime wages, spread of hours wages, and provide wage notices and statements; and (b) Named Plaintiffs' and Class Members' status as third party beneficiaries of contracts pursuant to which Defendants were obligated to pay prevailing wages.

## JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331, in that this action arises under the provisions of the FLSA, including under 29 U.S.C. §§ 207, 216, and 217, and under 18 U.S.C. § 1964 (RICO). This Court has jurisdiction over the Plaintiffs' state laws claims pursuant to 28 U.S.C. § 1367.

11.   Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391.  Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process.  The unlawful acts alleged herein have a direct effect on the Plaintiffs and those similarly situated, who were employed by Defendants within the State of New York and within this judicial district. Defendants operate facilities and have employed Named Plaintiffs and Class Members in this judicial district.

12.   This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

## **THE PARTIES**

### **Defendants**

13.   Upon information and belief, Cheever Development Corp. ("Cheever") is a New York corporation doing business in the County of New York, State of New York.

14.   Upon information and belief, Cheever has a principal office for the conduct of business in the City of New York, County of Richmond, and State of New York.

15.   Cheever is a general contractor that performs construction work for various projects in the New York City area.

16.   Upon information and belief, Cheever, by virtue of being the successful bidder in a public bidding process whereby Cheever contractually agreed to abide by prevailing wage schedules, Cheever was general contractor for the Projects.  Upon information and belief, in

submitting its bids and executing contracts to which Plaintiffs were third party beneficiaries, Cheever was informed of, and contractually agreed to comply with, prevailing wage requirements applicable to the Projects by virtue of public financing provided by the City and/or State of New York.

17.  Defendant Matthew Lonuzzi ("Lonuzzi") is an individual who resides in Staten Island, New York.

18.  Upon information and belief, Lonuzzi is the President of Cheever, and he is sued individually and in his capacity as owner and officer of Cheever.  Lonuzzi exercises sufficient control over Cheever's operations, and particularly its wage practices that affected Plaintiffs and Class Members, to be considered the employer of Plaintiffs and Class Members under the FLSA, NYLL and prevailing wage laws applicable to the worksites at 280-282 East Burnside Avenue, 2247 Walton Avenue and 2848 Bainbridge Avenue in Bronx County, New York.

19.  Upon information and belief, at all relevant times, Sheer Taping is a fictitious business/trade name by which defendant Eric Graves ("Graves") conducts business as a finish subcontractor for construction projects, including, *inter alia*, as subcontractor at 280-282 East Burnside Avenue, 2247 Walton Avenue and 2848 Bainbridge Avenue.

20.  Upon information and belief, Graves resides at 4305 Carpenter Avenue, Bronx, New York.   Upon information and belief, Graves also operates his finish subcontracting enterprise/venture, which is known as Sheer Taping (but, upon information and belief, does not exist as a valid and/or independent business entity), from this address.

21.  Upon information and belief, at all times relevant hereto, each of the Defendants have been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales of over $500,000.00.

22.   Upon information and belief, Defendants were joint employers of at least 160 painters, tapers, plasterers, and other finish workers at the Projects.

23.   Cheever took an active role in directly supervising and overseeing the work of Plaintiffs and Class Members.   Upon information and belief, Lonuzzi undertook responsibility for payment of prevailing wages, as well as for maintaining and certifying wage records for employees of Cheever and its subcontractors.

**<u>Named Plaintiffs</u>**

24.   At all times herein relevant, the Named Plaintiffs include persons within each of the Classes of persons further described and defined herein.

25.   At all times relevant to this action, the Named Plaintiffs were employees engaged in commerce or the production of goods for commerce on behalf of the Defendants.

26.   Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consent forms are attached hereto and incorporated by reference.

27.   Plaintiff Joel Nunez Jimenez ("Jimenez") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

28.   Plaintiff Efrain Lopez ("Lopez") is an adult, natural person who resides in the City of New York, County of Bronx, and State of New York.

29.   Plaintiff Jonathan Vega ("Vega") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

30.   Plaintiff Leandro Calvo ("Calvo") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

31.   Plaintiff Alfredo Villanueva ("Villanueva") is an adult, natural person who resides in the City, County and State of New York.

32.  Plaintiff Ruben Correa ("Correa") is an adult, natural person who resides in Union, New Jersey.

33.  Plaintiff Carlos Sanchez ("Sanchez") is an adult, natural person who resides in the City, County and State of New York.

34.  Plaintiff Jilber Norales ("Norales") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

35.  Plaintiff Fernando Osorio ("Osorio") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

36.  Plaintiff Angel Colon ("Colon") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

37.  Plaintiff Noel Castillo ("N. Castillo") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

38.  Plaintiff Ezequiel Nunez ("Nunez") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

39.  Plaintiff Jorge Olvera a/k/a Francisco Olvera ("Olvera") is an adult, natural person who resides in the City of New York, County of Queens and State of New York.

40.  Plaintiff Juan Salas ("Salas") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

41.  Plaintiff Jesus Castillo ("J. Castillo") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

42.  Plaintiff Efrain Lebron ("Lebron") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

43.   Plaintiff Joseph Laubriel ("Laubriel") is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

44.   Plaintiff Jose A. Palacios ("Palacios") is an adult, natural person who resides in the City of New York, County of Bronx, and State of New York.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

45.   The Plaintiffs bring this action individually and as a class and collective action on behalf of all persons similarly situated and proximately damaged by the Defendants' unlawful conduct as follows:

> (a) failure to pay wages for all hours worked and overtime compensation at rates not less than one and one-half times the regular rate of pay for work in excess of forty hours per workweek, as required by the FLSA;

> (b) failure pay for all hours worked and overtime compensation in breach of Article 19 of the NYLL, and failure to comply with related wage and hour provisions of the NYLL, including but not limited to wage statement and wage notice requirements;

> (c) engaging in a pattern and practice whereby defendants deprived Plaintiffs and Class Members of prevailing wages that Defendants were obligated to pay under NYLL § 220(3)(a) and/or pursuant to their contracts with public agencies that incorporated prevailing wage obligations, by, *inter alia*: (a) creating, certifying and/or submitting false time and payroll records relating to the Projects, which, upon information and belief, Defendants and/or their agents submitted to the New York City Comptroller's office and/or other public agencies; (b) orchestrating unlawful kickbacks by paying workers in cash at rates that were lower than prevailing wage schedules, while demanding that workers sign "payroll" checks, which Defendants kept; and (c) demanding that workers at the Projects conceal facts from and/or misrepresent Defendants' practices to public investigators as a precondition for their continued employment.

### FLSA Collective

46.   The FLSA Collective refers to all persons who are, or have been, finish workers (painters, tapers, drywall framers and plasterers) at the Projects during the FLSA Class period.

47.  This action claims that Defendants violated the wage and hour provisions of FLSA by depriving Named Plaintiffs and others similarly situated to Named Plaintiffs, of their lawful wages.  Upon information and belief, there are many similarly situated current and former workers of Defendants who have been underpaid in violation of the FLSA and who would benefit from court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

48. Consistent with the Defendants' policies and patterns or practices, the Named Plaintiffs and FLSA Collective were not paid proper overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond forty per workweek.

49.  All of the work that the Named Plaintiffs and the FLSA Collective have performed was assigned by the Defendants, and/or the Defendants have been aware of all of the work that the Named Plaintiffs and the FLSA Collective have performed.

50.  The FLSA Collective Plaintiffs are readily ascertainable.  Their names and addresses are readily available from Defendants.

51.  As part of their regular business practice, the Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to the Named Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to, willfully failing to pay proper premium overtime wages for all hours worked in excess of forty hours per workweek.

52.  Consent to sue forms for the Named Plaintiffs are being filed with this Court contemporaneously with the filing of this complaint.

**NYLL/Prevailing Wage Class**

53.  The NYLL/Prevailing Wage Class refers to all persons who worked as finish workers (painters, tapers, drywall framers and plasterers) at the Projects during the

10

NYLL/Prevailing Wage Class Period, to wit: on or after the date that is six years before the filing of the Complaint in this case until the date of final judgment in this matter.

54. The Named Plaintiffs bring their claims on behalf of themselves and the NYLL/Prevailing Wage Class pursuant to Rule 23 of the Federal Rules of Civil Procedure to remedy: (a) Defendants' violations of the minimum wage, overtime and related wage and hour provisions of the NYLL; (b) Defendants' breach of their contractual obligations to pay prevailing wages under contracts of which Plaintiffs and Class Members are third party beneficiaries; and (c) Defendants' willful breach of their prevailing wage obligations at the Projects through (i) their pattern and practice of demanding kick-backs from workers in exchange for employment at the Projects and (ii) willful deception of government agencies by knowingly creating, certifying and submitting materially false business records relating to the personnel and wages at the Projects, all in an effort to violate and/or conceal violations of prevailing wage rules.

55. Members of the NYLL/Prevailing Wage Class are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from Defendants' records.

56. The Defendants, their officers, and directors are excluded from the Classes.

57. There is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

    a)    Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the classes are so numerous that joinder of all members is impractical, if not impossible, insofar as the Named

Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members of each of the proposed classes exceeds fifty individuals.  Membership in the Plaintiff Class will be determined upon analysis of employee and payroll records, among other records maintained by Defendants.

       b)    <u>Commonality</u>: The Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy.  Consequently, class certification is proper under Fed. R. Civ. P. 23(b)(3) and 29 U.S.C. § 216(b).  These common questions include, but are not necessarily limited to:

*NYLL, Article 19 and Related Wage Orders:*

       i.    Whether Defendants violated the NYLL by failing to pay minimum wages and overtime compensation for hours worked in excess of forty (40) per week;

       ii.    Whether Defendants violated the NYLL by failing to pay the wages and wage supplements that Defendants promised to pay to Plaintiffs;

       iii.    Whether Defendants failed to provide wage notices or proper paystubs as required by NYLL § 195;

       iv.    Whether Defendants violated the NYLL by failing to properly record the number of hours worked and failed to pay for all hours worked;

       v.    Whether Defendants paid the Named Plaintiffs and Class Members on a weekly basis, as required by NYLL § 190(1)(a)(i), which provides

that employers must pay manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned;"

vi.      Whether Defendants willfully failed to pay Named Plaintiffs and Class Members one additional hour's pay at the basic minimum wage rate before allowances for each day that spread of hours exceeded ten (10) hours in violation of New York Lab. Law §§ 190 et seq. and 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. TIT. 12, § 146-1.6.

vii.      Whether Defendants unlawfully required the Named Plaintiffs and Class Members to purchase and supply their own "tools of the trade;" and

viii.      The nature and extent of class wide injury and the measure of damages for those injuries;

*Third Party Beneficiary/Prevailing Wages:*

i.      Whether Defendants complied with their contractual obligations to pay prevailing wages and wage supplements and complied with other obligations applicable to prevailing wage employees pursuant to prevailing rules and schedules that were incorporated in Defendants' contracts; and

ii.      The nature and extent of class wide injury and the measure of damages for those injuries.

*RICO:*

i.      The nature and extent of class wide injury and the measure of damages resulting from Defendants' pattern and/or practice of demanding "kick-backs" from Plaintiffs in exchange for continuing employment, and their

submission of falsified business records and willfully false certifications to
public agencies.

c)      Typicality: The Named Plaintiffs claims are typical of the claims of the
Plaintiff Class.  The Named Plaintiffs and all members of the Plaintiff Class sustained
injuries and damages arising out of and caused by Defendants' common course of
conduct in violation of state and federal law, and Defendants' breach of their contractual
commitments to pay prevailing wages.

d)      Superiority of Class Action: Since the damages suffered by individual
Class Members, while not inconsequential, may be relatively small, the expense and
burden of individual litigation by each member makes, or may make it, impractical for
Class Members to seek redress individually for the wrongful conduct alleged herein.
Should separate actions be brought or be required to be brought by each individual Class
Member, the resulting multiplicity of lawsuits would cause undue hardship and expense
for the Court and the litigants.  The prosecution of separate actions would also create a
risk of inconsistent rulings, which might be dispositive of the interests of other Class
Members who are not parties to the adjudications and/or may substantially impede their
ability to adequately protect their interests.  Consequently, Class certification is proper
under Fed. R. Civ. P. 23(b)(2) and 29 U.S.C. § 216(b).

e)      Adequacy of Representation: The Representative Plaintiffs in this class
action are adequate representatives of the Plaintiff Classes, in that the Named Plaintiffs'
claims are typical of those of the Plaintiff Classes and the Named Plaintiffs have the
same interests in the litigation of this case as the Class Members. The Named Plaintiffs
are committed to vigorous prosecution of this case, and have retained competent counsel,

14

experienced in employment litigation of this nature.  Upon information and belief, the

Named Plaintiffs are not subject to any individual defenses unique from those

conceivably applicable to the Class as a whole.

## COMMON FACTUAL ALLEGATIONS

58.  Defendants' unlawful and corrupt wage practices at the Projects were extensive,

willful, and involved their collusion to falsify business records and mislead government

compliance officers.

**Defendants' Willful Failure to Pay Minimum and Overtime Wages Required by the FLSA and NYLL:**

59.  As described herein, Defendants have knowingly failed to adequately compensate

those employees within the class definitions identified above for wages, including minimum

wage and premium (overtime) wages due, under the FLSA (29 U.S.C. §§ 206 and 207) and the

NYLL, as well as legally-mandated prevailing wages.

60.  At all relevant times, Defendants employed, and/or continue to employ Class

Members within the meaning of the NYLL and FLSA.

61.  Defendants did not compensate Plaintiffs and Class Members at 1.5 times their

regular rate for their overtime and/or required workers to perform overtime work with no

compensation at all for these work hours.

62.  During all relevant time periods, Plaintiffs and Class Members worked more than 40

hours per workweek.  Beginning in 2017, Defendants placed increasing demands on Plaintiffs

and Class Members, insisting that they work ten to twelve hours per day, six days per week, and

frequently significantly more, without paying Plaintiffs and Class Members 1.5 times their

effective hourly rates of pay for the hours worked in excess of forty (40) per workweek.

63. Defendants required workers to supply and pay for "tools of the trade," including but not limited to paint sprayers and protective facemasks.

64. The Defendants applied the same policies, practices, and procedures to finish workers (*i.e.*, tapers, painters, plasterers, and drywall framers) at 280-282 East Burnside Avenue, 2247 Walton Avenue and 2848 Bainbridge Avenue in Bronx County, New York.

### Facts Relating to Plaintiffs' Status as Third Party Beneficiaries of Prevailing Wage Construction Agreements and Defendants' Scheme to Deprive Plaintiffs of Prevailing Wages:

65.    The Projects constituted public works projects as defined by Article 9 of the New York Labor Law and/or pursuant to other applicable law.

66. New York Labor Law § 220 provides that the wages to be paid to works upon public work shall not be less than "prevailing rate of wages."

67. At all relevant times, Plaintiffs and similarly situated persons supplied labor in connection with, and in further of, the work required by Defendants at the Projects; and in doing so, complied with the terms of their employment agreements with Defendants.

68. Defendants breached their contractual obligations, which, upon information and belief, incorporated NYLL § 220, by shortchanging Named Plaintiffs and all others similarly situated.  Defendants effectuated this scheme through a pervasive pattern of illegal kickbacks, whereby Defendants would issue paychecks to certain Named Plaintiffs and similarly situated employees at or near the required "prevailing wage," amount(s), and require workers to endorse the checks back to Defendants.  Defendants would give significantly lower cash wages to Plaintiffs, in the amounts set forth herein below, and all others similarly situated.

69. Cheever entered into contracts with the City and/or State of New York, and, upon information and belief, with other governmental instrumentalities to perform the Projects, which

were publicly-financed projects.  Under said contracts, the Defendants were obligated to comply with relevant provisions of the New York Labor Law relating to prevailing wages.

70.  Upon information and belief, the Serviam Heights Development (at 2848 Bainbridge Avenue) was financed with "$47 million in fixed-rate, tax-exempt bonds from HDC and $11.9 million from the HDC Corporate Reserves." (See https://www.novoco.com/periodicals/news/low-income-housing-tax-credits-news-briefs-august-2016 (accessed on February 16, 2018)).

71.  Upon information and belief, Graves operated in the shadows of the New York construction industry, with a track record of willfully and systematically underpaying (and/or failing to pay) laborers in violation of the FLSA, NYLL and/or prevailing wage requirements.

72.  Upon information and belief, Graves' willingness to flout wage laws and other legal obligations enabled Cheever, Graves and their agents and managers at the Projects to extract unlawful profits by usurping public funds that were earmarked for Plaintiffs and Class Members.

73.  Upon information and belief, Graves' agents at the Projects collaborated with Cheever's management team, including Ashton Besse ("Besse"), Cheever's General Super, to conceal unlawful wage practices, including "kick-backs."

74.  Besse's job responsibilities for Cheever included, *inter alia*, overseeing superintendents, foremen and craftsmen on all construction sites on a daily basis, managing subcontractors, and "ensuring adherence to contract instruments." *See* http://www.cheeverdevelopment.com/managementteam.htm (accessed on February 6, 2018)

75.  Graves, through his foreman, and Besse (on behalf of Cheever) jointly carried out the scheme by, *inter alia*:

> (a) Providing compliance officers with falsified time records and false certifications, all in violation of NY Penal Law §§ 175.05 (falsifying business records in the

second degree), 175.10 (falsifying business records in the first degree) and/or 175.35 (offering a false instrument for filing in the first degree) and/or NY Labor Law § 220 3-a(a)(iii), which makes it a Class E for a contractor and every sub-contractor on a public works project to willfully fail to keep and file accurate payrolls

(b) When compliance officers arrived at the worksites, Graves' foreman, Newton Ogando, together with Besse, demanded that Plaintiffs and Class Members immediately vacate the worksites and remain hidden at local street corners;

(c) Graves, Ogando and Besse actively discouraged Plaintiffs and Class Members from disclosing their actual wages to HPD compliance officers. For example, plaintiff Olvera was instructed to tell anyone visiting the site from a public agency that he was paid $45.00 per hour, plus benefits, which was far above his earnings;

(d) Graves and his managers at the Worksites engaged in unlawful "kick-backs" by demanding that workers sign the backs of checks that had dollar amounts which were far higher than the actual cash wages paid to Plaintiffs and Class Members. Graves and/or his agents kept these checks and, instead, paid immigrant Plaintiffs and Class Members in cash, some receiving as little as $10.00 per hour. To effectuate this scheme, Graves and/or his agent demanded that workers sign (as a precondition for their continued employment) documents that purportedly authorized Graves to deposit and/or cash the checks.

76. Upon information and belief, on or about January 9, 2018, in an effort to cover up their scheme of depriving Plaintiffs and similarly situated employees of prevailing wages, Defendants abruptly terminated the employment of Plaintiffs and similarly situated employees who were designated as employees of Sheer Taping, and ordered them, without notice, to cease reporting to work at the Serviam Heights Project.

77. Through their foregoing collusion, Defendants unlawfully retained, for their own financial gain, portions of funds paid by government agencies that were earmarked for the benefit of Plaintiffs and similarly situated workers at the Projects.

### FACTS RELATING TO INDIVIDUAL PLAINTIFFS

78. Plaintiffs worked for Defendants at the Projects during various periods from early 2016 through January 2018. Particularly in 2017, as the pace of work at the Projects increased,

Plaintiffs typically worked six days per week, without receiving one and one-half times their effective hourly rates of pay, despite working well in excess of forty hours per week.

79.   All of the Plaintiffs were required to provide and pay for their own tools of the trade, without reimbursement from Defendants.

80.   Defendants paid certain Plaintiffs every fifteen days, in violation of NYLL § 190(1)(a)(i), which provides that employers must pay manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned."

### Jimenez

81.   Jimenez worked at the Serviam Heights Development as a painter and drywall finisher beginning in or about May 2017 until in or about January 2018.   Jimenez worked five and six day workweeks.   On weekdays, he began at 7:00 a.m. until as late as 9:00 p.m. On Saturdays, Jimenez worked eight hours.

82.   Despite workweeks of 68 or more hours, Jimenez was not paid one and one half times his regular rate of pay for hours worked in excess of forty (40) per workweek.   Instead, Jimenez was paid at his regular hourly rate of $18.75 per hour, with no premium overtime compensation.

### Lopez

83.   Lopez worked as a painter and drywall finisher at the Serviam Heights Development beginning from approximately April through December 2016.

84.   Lopez alternately worked five and six days per week. On weekdays, he worked from 7:00 a.m. until approximately 5:00 p.m. On Saturdays, he typically worked an eight-hour shift.

85.   Despite working as much as 58 hours per week, Lopez was never paid premium overtime compensation.   Instead, Defendants paid Lopez the same regular daily rate ($100.00) regardless of the number of hours or days per week that he worked.

*Vega*

86.   Vega worked as a painter and drywall finisher at the Serviam Heights Development beginning in the summer of 2016 until on or about December 10, 2017.

87.   Vega was paid $130.00 per day, regardless of the number of overtime hours that he worked.

88.   Vega alternately worked five and six days per week.   On weekdays, he worked from 7:00 a.m. until approximately 5:00 p.m. On Saturdays, he typically worked an eight-hour shift.

89.   Despite working as much as 58 hours per week, Vega was never paid premium overtime compensation.   Instead, Defendants paid Vega the same regular daily rate ($130.00) regardless of the number of hours or days per week that he worked.

*Calvo*

90.   Calvo worked as a painter, sander and drywall finisher at the Serviam Heights Development beginning in or about May 2017 until on or about December 16, 2017.   Calvo's work involved interior finishing work, including painting moldings in interior areas of the Serviam Heights Development and sanding surfaces, including walls.

91.   Calvo generally worked six days per week.   On weekdays, Calvo worked from 7:00 a.m. until as late as 7:00 p.m. and, on occasion, until as late as 9:00 p.m.   On Saturdays, Calvo worked eight hours.

92. Calvo worked particularly long hours during the last four months of his employment with defendants (*i.e.*, from September 2017 through December 16, 2017).  During this period, Calvo worked until as late as 9:00 p.m.

93. Despite Calvo's workweeks that encompassed more than 40 hours, Calvo was not paid one and one half time his regular rate of pay for hours worked in excess of forty (40) per workweek.  Calvo was paid a fixed daily rate of $140.00 that only compensated him for the first forty hours that he worked per week.

### *Villanueva*

94. Villanueva worked as a painter and drywall finisher at the Serviam Heights Development beginning on or about May 7, 2017 until on or about January 1, 2018.

95. During his employment, Villanueva regularly worked six days per week.  On weekdays, Villanueva worked twelve hours per day.  On Saturdays, Villanueva worked eight hours.  Despite these 60-hour-plus workweeks, Villanueva was not paid one and one half time his regular rate for overtime hours.  Instead, he was paid at his regular pay rate, with no premium overtime compensation.

### *Correa*

96. Correa worked as a painter and drywall finisher at the Serviam Heights Development during the spring of 2017.

97. Correa was paid $100.00 per day, which did not vary even when Correa was required to stay later or work a longer schedule than usual.

98. Despite workweeks of six days per week that encompassed more than 40 hours of work, Correa was not paid one and one half time his regular rate for overtime hours.  Instead, he

was paid at his regular rate of $100.00 per day, which only compensated Correa for the first forty hours that he worked each week.

### Sanchez

99. Sanchez worked as a painter at the Serviam Heights Development during the summer of 2017.

100. Sanchez worked six days per week as follows: Monday through Friday, from 7:00 a.m. to 5:00 p.m.; and Saturday, from 7:00 a.m. to approximately 3:00 p.m.

101. Although Sanchez' workweeks encompassed more than 40 hours of work, Sanchez received $100.00 per day, regardless of the number of hours per day or per week that he worked.

### Norales

102. Norales worked as a painter and drywall finisher at the Serviam Heights Development beginning in or about March 2016 until on or about November 2017.   Morales alternately worked five and six days per week, with six-day workweeks particularly prevalent in 2017.

103. Although Norales' workweeks encompassed more than 40 hours of work, Norales received $150.00 per day, regardless of the number of hours per day or week that he worked.

### Osorio

104. Osorio worked as a painter and finish worker at the Serviam Heights Development from approximately January through October, 2017.   Osario worked six days per week, beginning at 7:00 a.m. each morning until as late at 7:00 p.m.

105. Although Osorio's workweeks encompassed more than 40 hours of work, Osorio received $100.00 per day, regardless of the number of hours per day or per week that he worked, with no premium overtime compensation for hours worked above forty per week.

### Colon

106. Colon performed painting, finishing and drywall work at both the Serviam Heights (2016 – January 2018) and Burnside-Walton Developments (summer 2017).  At the Burnside-Walton Development, Colon's duties included priming and waterproofing a portion of the roof where heavy equipment was to be installed.

107. At the Serviam Heights Development, Colon's duties included painting ceilings, doors, brick walls in the basement, and other surfaces, as well as finishing work that involved sanding of sheetrock and other surfaces.

108. Beginning in 2017, Colon regularly worked six days per week (Monday through Saturday) at a rate of $160.00 per day.  His workweeks consisted of substantially more than forty (40) hours.  However, he received the same daily sum, regardless of the number of hour per day or week that he worked.

### N. Castillo

109. N. Castillo was employed by Defendants as a painter and plasterer at the Serviam Heights Development from approximately August 14, 2017 through January 9, 2018.

110. During the first three months of his employment, Defendants paid him $140.00 per day; thereafter, his daily pay was raised to $150.00 and, finally, to $160.00.

111. N. Castillo received the foregoing daily wages regardless of the number of hours per day or per week that he worked, even though he regularly worked more than 40 hours per workweek.

112. In 2017, when the pace of work at the Serviam Heights Development increased, N. Castillo regularly worked six hours per day, including twelve hours of work on weekdays, beginning at 7:00 p.m. until 7:00 p.m.

113. Although N. Castillo's regular workweeks encompassed more than 40 hours of work, N. Castillo received the same daily wage, regardless of the number of hours per day or per week that he worked.

**Nunez**

114. Nunez was employed by the Defendants at the Serviam Heights Development from on or about August 17, 2017 until on or about January 9, 2018.

115. Initially, Nunez was paid $140.00 per day.  After approximately the first month of his employment, Defendants reduced Nunez' daily wage to $130.00.

116. Like the other Plaintiffs, Nunez' worked six days per week at Serviam Heights in 2017.  He worked 12-hour shifts on weekdays. On Saturdays, he worked from 7:00 a.m. to approximately 3:00 p.m.

117. Although Nunez' workweeks encompassed more than 40 hours of work, he received the same daily wage, regardless of the number of hours per day or per week that he worked.

**Olvera**

118. Plaintiff Olvera was employed by Defendants as a plasterer and compound taper at the Serviam Heights Development from in or around September 2017 through in or about the last week of December 2017.

119. For his work, Olvera was paid on an hourly basis at the rate of Fifteen Dollars ($15.00) per hour.  He never received overtime pay of 1.5 times his regular hourly rate for hours he worked above forty each week.

120.  On weekdays, Olvera often worked from 7:00 a.m. to 10:00 p.m. (and, on occasion, 11:00 p.m.).  On Saturdays, Olvera worked eight hours, typically from 7:00 a.m. to 3:00 p.m. or

later.  Regardless of the number of hours that he worked, Defendants paid Olvera straight time, at his regular hourly rate.

### Salas

121. Salas was employed by the Defendants at the Serviam Heights Development as a taper and painter from in or about October 2017 until in or about December 2017.

122. Salas worked six days per week at Serviam Heights in 2017.  He worked 12-hour shifts on weekdays. On Saturdays, he worked from 7:00 a.m. to approximately 3:00 p.m.

123. Although Salas' workweeks encompassed more than 40 hours of work, he received the same daily wage ($120), regardless of the number of hours per day or week that he worked.

### J. Castillo

124. J. Castillo was employed by the Defendants at the Serviam Heights Development as a compounder, plasterer and taper from in or about February to December 2017.

125. J. Castillo's weekly schedule consisted of six days per week, for a total of 48 hours. However, he was paid the same daily wage of $100.00, regardless of the number of hours per day or per week that he worked.

### Lebron

126. Lebron was employed by the Defendants at the Serviam Heights Development as a taper, sander, and laborer from approximately August through December 2017.

127. Lebron worked six days per week, from Monday through Saturday, twelve hours per day on weekdays.

128. Despite the substantial number of overtime hours that his weekly work schedule involved, Lebron was paid the same daily wage of $80.00, regardless of the number of hours per day or per week that he worked.

*Laubriel*

129. Laubriel was employed by the Defendants at the Burnside-Walton Development from approximately January through August 2017.  Laubriel was employed by Defendants at the Serviam Heights Development from approximately November through December 2017.

130. Laubriel worked six days per week, Monday through Saturday.  However, during approximately seven workweeks, he worked all seven days.

131. Laubriel was deprived of both overtime and prevailing wage compensation.  He has since received certain compensation for certain sums owed to him in connection with his work at the Burnside-Walton Development.

*Palacios*

132. Palacios was employed by the Defendants at the Serviam Heights Development as an interior painter beginning in or about October to December 2017. He worked ten hours per day, five to six days per week.  Defendants paid Palacios the same daily wage of $150.00, regardless of the number of hours per day or per week that he worked.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***
**(FLSA Collective)**

133. The Named Plaintiffs repeat and reallege all allegations in the preceding paragraphs.

134. Defendants willfully violated the FLSA by failing to pay the Named Plaintiffs and the Collective overtime for hours worked in excess of forty per week, as required under the FLSA § 7(a)(1), 29 U.S.C. § 207(a)(1).

135. Defendants willfully failed to pay the Named Plaintiffs and members of the FLSA Collective one and one-half the regular rates of pay for hours worked in excess of forty hours per workweek.

136. Named Plaintiffs and members of the FLSA Collective are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees pursuant to the FLSA § 16(b), 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (Brought on behalf of Plaintiffs and the NYLL/Prevailing Wage Class – Rule 23)

137. Named Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

138. Defendants have engaged in a widespread pattern, policy and practice of violating the NYLL, as detailed in this Complaint.

139. At all times relevant, Plaintiffs and Class Members have been employees of Defendants, and Defendants have been employers of Plaintiffs and Class Members within the meaning of the NYLL §§ 650 et seq. and New York State Department of Labor Regulations.

140. At all times relevant, Named Plaintiffs and Class Members have been covered by the NYLL.

141. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Class Members.

142. Defendants failed to pay Named Plaintiffs and Class Members appropriate premium overtime wages for hours they worked in excess of 40 hours in a workweek.

143. Defendants have failed to pay Plaintiffs and Class Members premium overtime at a rate of time and one-half their regular hourly rate for all hours worked in excess of 40 hours per workweek.

144. Defendants have failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and Class Members.

145. Through their knowing failure to pay overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, entitling Plaintiffs to unpaid overtime, as well as reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Wage Statement Violations**
**(On Behalf of Plaintiffs and the NYLL/Prevailing Wage Class – Rule 23)**

146. Named Plaintiffs, on behalf of themselves and Class Members, repeat and reallege each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

147. Defendants willfully failed to provide Plaintiffs and Class Members with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such information as required by NYLL § 195(3).

148. The Named Plaintiffs and Class Members are entitled to recover from Defendants wage-notice statutory damages of $50 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198 (1-b).  Defendants also violated the NYLL § 195(3) wage statement requirements, for which the Defendants are liable for $250.00 per workday, up to $5,000, per employee, as well as attorneys' fees, costs, and pre-judgment and post-judgment interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Illegal Deductions, New York Labor Law, Article 19 § 193
### and 12 N.Y.C.R.R. § 2.10(a).
### (On Behalf of Plaintiffs and the NYLL/Prevailing Wage Class – Rule 23)

149. Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

150. In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiffs and members of the New York Class, including, *inter alia*, requiring Plaintiffs and similarly situated workers to provide and pay for their own "tools of the trade," which further reduced their effective, hourly rates of compensation below the required minimum and overtime rates of pay.

151. As a result of the foregoing, Plaintiffs seek judgment against Defendants on their own behalf, and on behalf of putative New York Class Members similarly situated for reimbursement of unlawful deductions, as well as liquidated damages, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Violation of the Spread of Hours Wage Order
### of the New York Commissioner of Labor
### (On Behalf of Plaintiffs and the NYLL/Prevailing Wage Class – Rule 23)

152. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

153. Defendants failed to pay Plaintiffs and similarly situated employees one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of the New York Lab. Law §§ 190 et seq. and 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6

154. Defendants failure to pay an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

155. Plaintiffs and Class Members were damaged in an amount to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Third Party Beneficiaries of Contracts Incorporating Prevailing Wage Obligations**
**(On Behalf of Plaintiffs and the NYLL/Prevailing Wage Class – Rule 23)**

156. Named Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

157. Through their systematic failure to pay prevailing wages to the Named Plaintiffs and Class Members, Defendants breached their contractual obligations, to the detriment of Plaintiffs and Class Members, who are the third party beneficiaries of these contracts.

158. Upon information and belief, Defendants entered into a contract with local and/or state government entities, including the HPD, when they became contractor and subcontractor of the Projects. The terms of these contracts including the requirement of paying construction workers prevailing wages, as well as the supplemental benefit rate over and above the prevailing wage rate.

159. Those prevailing rates of wages and supplemental benefits were made part of the contracts for the benefit of the Plaintiffs and other employees performing construction work at the Projects. In the event that the contacts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were incorporated in the contracts as a matter of law.

160. Upon information and belief, prior to commencing work at the Projects, Defendants were provided with HPD's "Preconstruction Checklist for Contractors," which sets forth a

checklist of the contract requirements pertaining to prevailing wages that Defendants were obligated to comply with.

161. Upon information and belief, these HPD contractual requirements included, *inter alia*, that Cheever and Lonuzzi review all "contract provisions covering labor standards requirements" prior to the commencement of construction work, and that they inform each worker of his/her hourly wages, not less than the hourly rate provided for in the wage decision and/or schedule applicable to the project.

162. Defendants breached the labor standards terms and conditions of their contracts by failing to pay Plaintiffs and Class Members, who were third party beneficiaries of these public work contracts, at New York State and/or City prevailing wage rates, overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day and supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules.

163. Defendants' failure to pay Plaintiffs and Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed at the Projects constituted a material breach of the contracts entered into between Defendants and certain public entities, including, upon information and belief, the HPD.

164. The Named Plaintiffs and Class Members have suffered injuries and are entitled to reimbursement, restitution, and disgorgement from all of the Defendants herein.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the NYLL/Prevailing Wage Class – Rule 23)**

165. Named Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

166. The Defendants have been unjustly enriched to the detriment of Named Plaintiffs and Class Members because they have received unlawful kickbacks, made unauthorized deductions from wages, and engaged in a coordinated scheme to deprive Plaintiffs and Class Members of wages and supplements that were required by law and contracts of which Plaintiffs and Class Members were third party beneficiaries.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**For Violations of Racketeer Influenced Corrupt Organizations Act**
**(On Behalf of Plaintiffs and the NYLL/Prevailing Wage Class – Rule 23)**

167. Named Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

168. Defendants, acting as an enterprise, shortchanged Plaintiffs and all others similarly situated, in a kickback scheme whereby Defendants would issue payroll checks in amounts that, upon information and belief, were comparable to the required prevailing wage rates, and required Plaintiffs and similarly situated employees to sign and return the checks back to Defendants, who kept the funds for their own use.

169. Defendants further effectuated their kickback scheme by demanding, on the threat of being terminated, that Plaintiffs and similarly situated employees sign documents that purportedly authorized Defendants to cash or deposit these checks.

170. Defendants would exploit the Plaintiffs' fear of economic harm in order to induce them to return "payroll" checks - which were drawn to the order of Plaintiffs – back to Defendants.

171. In furtherance of this scheme, Defendants demanded that Laubriel, Salas, and other Named Plaintiffs and Class Members sign documents that purportedly authorized Graves and/or his agents to deposit the payroll checks that Defendants fabricated for the purpose of stealing wages from workers.

172. Said acts on the part of the Defendants constitute a pattern of extortion, which is chargeable under New York State law and punishable by imprisonment for more than one year and is indictable under 18 U.S.C. § 1951, otherwise known as the Hobbs Act.

173. Defendants further carried out their scheme by demanding that Plaintiffs, on threat of being terminated, misrepresent the amount of their wages to compliance officers from the New York City Department of Housing Preservation and Development and, upon information and belief, other government instrumentalities. On threat of termination, throughout the construction work at the Projects, Defendants demanded that Named Plaintiffs and similarly situated workers immediately vacate the workplace and hide from officers who monitored compliance with prevailing wage rules.

174. Plaintiffs and similarly situated works at the Projects were the intended targets and victims of Defendants' scheme in that the prevailing wage funds that Defendants unlawfully seized for their own use were intended to benefit Plaintiffs, as workers at public work projects.

175. The pattern of racketeering activity referred to above consisted of an extortion scheme, which had the specific intent of using unlawful influence to enrich Defendants at the expense of Plaintiffs. The scheme involved more than two acts of extortion of Plaintiffs.

176. As a result of the foregoing, Plaintiffs have been injured in their persons and property in that they have paid the aforesaid "kick-backs" under duress and fear of economic harm and/or have sustained loss of earnings and mental anguish and emotional distress and are

therefore entitled to treble damages, punitive damages, costs and expenses of the suit and reasonable attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** the Named Plaintiffs, on behalf of themselves, the FLSA Collective and the NYLL/Prevailing Wage Class, respectfully request that the Court grant the following relief:

A.      On their first cause of action, designation of this action as a collective action on behalf of the FLSA Collective members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the FLSA Class Members;

B.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3);

C.      An order tolling the statute of limitations;

D.      That the Court declare, adjudge and decree that Defendants willfully violated their legal duties to pay minimum wages and overtime compensation as required under the FLSA and NYLL;

E.      That the Court further declare, judge and decree that the Named Plaintiffs and members of the Breach of Contract/Prevailing Wage Class are Third Party Beneficiaries of the public works contracts and/or financing agreements relating to construction of the Projects;

F.      That the Court declare, adjudge and decree that the Named Plaintiffs and Class Members were at all times relevant hereto, and are, entitled to be paid (b) overtime for work

beyond 40 hours in a week; (c) remuneration for unlawful deductions; and (d) that the amounts to which Named Plaintiffs, the FLSA Collective, and the NYLL/Prevailing Wage Class are entitled is to be doubled as liquidated damages and awarded thereto;

G.      That the Court compensate the Named Plaintiffs and Class Members for unpaid prevailing wages and other damages stemming from the Defendants' contracts incorporating prevailing wage requirements;

H.      Treble damages pursuant to RICO;

I.      For all other Orders, findings and determinations identified and sought in this Complaint;

J.      For prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

K.      For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

L.      Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
        February 28, 2018

**RAPAPORT LAW FIRM, PLLC**

*By: /s/* Marc A Rapaport_____

Marc A. Rapaport, Esq.
Meredith R. Miller, Esq.
*Attorney for Plaintiffs*
*and Plaintiff Classes*
Rapaport Law Firm, PLLC
One Penn Plaza, Suite 2430
New York, New York 10119
Ph: (212) 382-1600