UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

JOEL NUNEZ JIMENEZ, EFRAIN LOPEZ,
JONATHAN VEGA, LEANDRO CALVO,
ALFREDO CUEVOS VILLANUEVA, RUBEN
CORREA, CARLOS SANCHEZ, JILBER NORALES,
FERNANDO OSORIO, ANGEL COLON, NOEL
CASTILLO, EZEQUIEL NUNEZ PIMENTEL,
JORGE OLVERA a/k/a FRANCISO OLVERA, JUAN
SALAS, JESUS CASTILLO CASTRO, EFRAIN
LEBRON, JOSEPH LAUBRIEL, JOSE A.
PALACIOS, RENAN ELIZALDE SALAMANCA,
JORDAN GARCIA, WILMER GARCIA, JEFFREY
MURPHY, RICARDO DIAZ, FREDERICK BROWN,
BRYAN VALENTINE, ROBERTO ACEVEDO,
CURTIS SANDY, JESSE BROWN, JERRY BROWN,
WILLIE HAWKINS, JUSTIN BROWN, MIGUEL
RONZON, JOSE RIVERA, JOHN ARNOLD,
ANDREW CUESTO, GERMAN LOPEZ RIVERA
a/k/a ADONIS LOPEZ, LENNOX WHYTE, and
OTHNEIL WHYTE,

18-CV-01806 (KBF)

Filed Electronically

                                        Plaintiffs,

- against -

CHEEVER DEVELOPMENT CORP., SHEER
TAPING, MATTHEW LONUZZI, ERIC GRAVES,
and LIBERTY MUTUAL INSURANCE COMPANY
d/b/a LIBERTY MUTUAL SURETY,

                                        Defendants.

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, CHEEVER DEVELOPMENT CORP., MATTHEW LONUZZI AND LIBERTY MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS

Forchelli Deegan Terrana, LLP
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
*Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

THE APPLICABLE STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

I.       THE COMPLAINT FAILS TO STATE ANY ACTIONABLE OR
         SPECIFIC FACTS TO RAISE ANY CLAIMS AGAINST CHEEVER
         DEVELOPMENT CORP. AND/OR MATTHEW LONUZZI . . . . . . . . . . . . . . . . . 4

    A. PLAINTIFFS' FIRST CAUSE OF ACTION FAILS
       TO STATE A CAUSE OF ACTION FOR OVERTIME
       WAGES VIOLATIONS UNDER *LUNDY* . . . . . . . . . . . . . . . . . . . . . . . . 4

    B. PLAINTIFFS' FIRST THROUGH FIFTH AND EIGHTH
       CAUSE OF ACTION FAIL TO STATE A CAUSE OF ACTION
       FOR OVERTIME WAGES VIOLATIONS, WAGE STATEMENT/
       NOTICE VIOLATIONS, DEDUCTIONS VIOLATIONS AND/
       OR SPREAD OF HOURS VIOLATIONS . . . . . . . . . . . . . . . . . . . . . . . . 8

    C. PLAINTIFFS' SIXTH CAUSE OF ACTION FAIL TO STATE
       A CAUSE OF ACTION FOR ALLEGED UNJUST ENRICHMENT . . . . . . . . . . . . 12

    D. PLAINTIFFS' SEVENTH CAUSE OF ACTION FAIL TO STATE
       A CAUSE OF ACTION FOR ALLEGED CIVIL RICO VIOLATIONS . . . . . . . . . . . .13

II.      THE COMPLAINT FAILS TO STATE ANY
         ACTIONABLE OR SPECIFIC FACTS TO RAISE
         ANY CLAIMS AGAINST LIBERTY MUTUAL INSURANCE COMPANY . . . . . . . . . . . 17

    A. PLAINTIFFS' NINTH CAUSE OF ACTION FAIL TO STATE
       A CAUSE OF ACTION BOND ENFORCEMENT . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal,*
U.S., 129 S.Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 11, 12

*Alnwick v. European Micro Holdings, Inc.,*
281 F. Supp. 2d 629 (E.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . .14,15

*Am. Sales Co. v. Astrazeneca AB,*
2011 WL 1465786 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Atuahene v. City of Hartford,*
10 Fed.Appx. 33, 34 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Beauvoir v. Israel,*
794 F.3d 244 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . .1,2, 3, 4, 5, 6, 7, 8, 11, 12

*Broder v. Cablevision Sys. Corp.,*
418 F.3d 187 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bustillos v. Academy Bus, LLC,*
2014 WL 116012 (S.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Carter v. Dutchess Cmty. Coll.,*
735 F.2d 8, 12 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Castro v. Fidelity and Deposit Company of Maryland,*
39 F.Supp.3d 1 (D.D.C 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,*
70 N.Y.2d 382, 388 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Clifford F. MacEvoy Co. v. U.S. ex rel. Calvin Tomkins Co.,*
322 U.S. 102, 109, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). . . . . . . . . . . . . . . . . . 17

*Conte v. Newsday, Inc.,*
2010 WL 1257887 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Danielsen v. Burnside-Ott Aviation Training Ctr.*,
941 F.2d 1220 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . .13

*DeJesus v. HG Mgmt. Servs., LLC*,
726 F.3d 85 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

*Eldred v. Comforce Corp.*,
2010 WL 812698 (N.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . .14

*Herman v. RSR Sec. Servs. Ltd.*,
172 F.3d 132, 135 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Elevator Antitrust Litig.*,
502 F.3d 47, 50 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 16

Int'l Audiotext Network, Inc. v. AT&T,
62 F.3d 69 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Isenberg v. H. Cotler Co., Inc.*,
1996 WL 131874 (S.D.N.Y. 1996). . . . . . . . . . . . . . . . . . . . . . . . 8

*Liddle & Robinson, LLP v. Garrett*,
2010 WL 2628656 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . 12

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Livingston v. Shore Slurry Seal, Inc.*,
98 F. Supp. 2d 594 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . .13

*Lopez v. Acme Am. Envtl. Co., Inc.*,
2012 WL 6062501 (S.D.N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . . .9

*Lundy v. Catholic Health Sys. Of Long Isl., Inc.*,
711 F.3d 106 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6, 7, 8

*Marcilis v. Twp. Of Redford*,
693 F.3d 589, 596 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . .16

*Martin v. City of New York,*
2008 WL 1826483 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*McNamara v. City of New York,*
2007 WL 1062564 (E.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,*
418 F.3d 168, 175 (2d Cir.2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mills v. Polar Molecular Corp.,*
12 F.3d 1170, 1175 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,*
723 F.3d 192 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 5, 8

*Norman v. Niagara-Mohawk Power Corp.,*
873 F.2d 634 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Papasan v. Alain,*
478 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 5

*Petras v. Johnson,*
1993 WL 228014 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Procapui-Productores de Camaroes de Icapui Ltda. v. Layani,*
2008 WL 3338199 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Strunk v. United States House of Representatives,*
68 Fed. Appx. 233 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States ex rel. Krol v. Arch Insurance Co.,*
46 F.Supp.3d 347 (S.D.N.Y 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Vasto v. Credico,*
2017WL4877424 (S.D.N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Zheng v. Liberty Apparel Co.,*
355 F.3d 61 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>STATUTES</u>

Fed.R.Civ.P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

Fed.R.Civ.P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

Fed.R.Civ.P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 8

N.Y. C.P.L.R. § 213(2) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201 *et seq.*. . . . . . . . . . . . . 1

The Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C.A. §§ 1961 *et seq.*. . . . . 1

## **PRELIMINARY STATEMENT**

The plaintiffs invoked the jurisdiction of this Court on February 28, 2018, based upon specious claims alleging class-wide violations of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201 *et seq.* ("FLSA"), as well as various state law causes of action including claims for prevailing wages under New York State Labor Law § 220.  Pursuant to leave of this Court, on May 15, 2018, after receiving a copy of the relevant prime contract designating the Serviam Heights senior housing Project located at 2848 Bainbridge Avenue a Davis Bacon Act project, the plaintiffs' amended the complaint (the "Amended Complaint") to remove the original sixth cause of action seek recovery of prevailing wages under New York State Labor Law § 220 and re-plead those claims as bare bones civil RICO violation allegations under and The Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C.A. §§ 1961 *et seq.*

The Defendants, Cheever Development Corp. (hereinafter "Cheever"), Matthew Lonuzzi (hereinafter "Lonuzzi"), and Liberty Mutual Insurance Company (hereinafter "Liberty") (collectively hereinafter "Defendants"), respectfully submit this memorandum of law in support of their Fed. R. Civ. P. 12(b)(6) and 12 (c) motion to dismiss plaintiffs' Amended Complaint. As set forth more fully below, the Amended Complaint supplies "nothing but low-octane fuel for speculation" that does not meet the plausibility standards established by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Lundy v. Catholic Health Sys. Of Long Isl., Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (affirming dismissal of FLSA claim); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013) (same); and *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013) (same).

1

For the foregoing reasons, as well as the reasons stated below, the Court should dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6) and 12(c).

## ARGUMENT

## THE APPLICABLE STANDARDS

It is generally accepted that on a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). However, in order to satisfy the pleading requirement, set forth in Fed. R. Civ. P. 8, and to survive a motion brought pursuant to Rule 12, the plaintiffs' must have plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged ... and requires ... more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 662, 678. This obligation to "provide the grounds of entitlement to relief require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (citing: *Papasan v. Alain*, 478 U.S. 265, 286 (1986)).

It is also well settled that while courts must assume the veracity of all "well-pleaded factual allegations" in the complaint, this assumption does not apply to "legal conclusions" or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. 662, 678 (quoting Twombly at 557). Even the relaxed pleading standards under Rule 8 "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a Rule 12 motion. *Iqbal*,

556 U.S. 662, 678 (*citing Twombly*, 550 U.S. 555 (citing *Papasan*, supra)).  Simply put, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. 662, 679 (*citing Twombly*, 550 U.S. 555, 556).

Accordingly, as the Supreme Court stated in *Iqbal*, it is proper for courts, when ruling on Rule 12 motions, to employ the "two-pronged approach" utilized in *Twombly*.  *Iqbal*, 556 U.S. 662, 679.  In applying the "two-pronged approach" to dismiss motions, Courts first disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then "determine whether the remaining pleadings plausibly give rise to an entitlement to relief." *Id.* at 679.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 678.  Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. 555, 556.

In applying the second prong, the Court in *Iqbal* held that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. 662, 678-79.  The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.

*Id.* at 678 (*quoting Twombly*, 550 U.S. 555, 556-57) (internal citations omitted).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 662, 678 (citation omitted).  The plaintiffs in the instant action are required to alleged more by way of factual content to nudge their claims across the line from

conceivable to plausible. *Id.* at 678.  In undertaking such review, the Court may consider "documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (internal quotation marks and alteration omitted). "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nonetheless take the document into consideration in deciding the defendant's motion to dismiss ...." *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). "Insofar as the complaint relies on the terms of [an] agreement," courts "need not accept its description of those terms, but may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

As set forth below, the allegations against Cheever and Lonuzzi contained in the Amended Complaint are devoid of "further factual enhancement" of any kind and consist only of "naked assertions" and "legal conclusions", without more, which do not suffice under *Iqbal* or *Twombly*.  See *Iqbal* at 678-79; *Twombly* at 557.

I.   **THE COMPLAINT FAILS TO STATE ANY ACTIONABLE OR SPECIFIC FACTS TO RAISE ANY CLAIMS AGAINST CHEEVER DEVELOPMENT CORP. AND/OR MATTHEW LONUZZI.**

 A.  **PLAINTIFFS' FIRST CAUSE OF ACTION FAILS TO STATE A CAUSE OF ACTION FOR OVERTIME WAGES VIOLATIONS UNDER *LUNDY*.**

Under the FLSA, an employee who works in "excess of forty hours" shall be paid for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); see also *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113-114 (2d Cir. 2013).  In a trio of cases from 2013, the Second Circuit clarified the pleadings standard for asserting such claims, known as FLSA overtime claims. *See Bustillos*

*v. Academy Bus, LLC*, 2014 WL 116012, at *2 (S.D.N.Y. 2014) (discussing cases).

The Second Circuit announced the pleadings requirement for FLSA overtime claims in *Lundy*, concluding that, "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114. Much like in the instant action, in affirming dismissal of the complaint, the Circuit found "no plausible claim that [the] FLSA was violated, because Plaintiffs have not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Id.*  For example, one of the plaintiffs in *Lundy* alleged that she "was 'typically' scheduled to work three shifts per week, totaling 37.5 hours." *Id.*  She alleged that her employer required her to work without compensation during her thirty-minute lunch break, before and after shifts, and at a monthly staff meeting lasting approximately thirty minutes. *Id.* at 115.

The Second Circuit explained that allegations regarding "typical" practices fall short of the requisite specificity because such claims "invite speculation" as to whether the plaintiff worked more than forty hours in any given week. *Id.*  Indeed, this opinion underscored the requirement that the alleged unlawful practices must result in work performed in excess of forty hours. See *Id.* ("[Plaintiff] has not alleged that she ever completely missed all three meal breaks in a week, or that she also worked a full 15 minutes of uncompensated time around every shift; but even if she did, she would have alleged a total 39 hours and 45 minutes worked."); see also *DeJesus v. HG Mgmt. Servs., LLC*, 726 F.3d 85, 88-89 (2d Cir. 2013) ("The allegations in Lundy thus failed because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime.").

In *Nakahata v. New York-Presbyterian Healthcare*, 723 F.3d 192 (2d Cir. 2013), the Second Circuit reinforced its holding in *Lundy*, affirming dismissal of FLSA overtime claims in which the plaintiffs "merely alleged that they were not paid for overtime hours worked." *Id.* at 201. Such perfunctory allegations, without greater specificity "raise the possibility that Plaintiffs were undercompensated in violation of the FLSA" for work performed during meal breaks, before and after shifts, or during training sessions; "however, absent any allegation that Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a plausible claim for such relief." *Id.*

Finally, in *DeJesus*, the Second Circuit affirmed dismissal of a claim for FLSA overtime that did no more than "rephrase the FLSA's formulation specifically set forth in section 207(a)(1)." *DeJesus*, 726 F.3d at 89 (emphasizing that the "complaint tracked the statutory language of the FLSA, lifting its numbers and rehashing its formation, but alleg[ed] no particular facts sufficient to raise a plausible inference of an FLSA overtime violation"). As the Court noted, the *Lundy* pleading standard "was designed to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" *Id.* (citing *Twombly*, 550 U.S. at 570). To satisfy this standard, plaintiffs are not required to "keep careful records and plead their hours with mathematical precision"; however, the standard requires that plaintiffs provide "complaints with sufficiently developed factual allegations." *Id.*

In the instant action there can be no dispute that the allegations contained within the Amended Complaint do not meet the *Lundy* requirements for pleading FLSA overtime wages. Similar to the plaintiff's pleadings in *Lundy*, the Amended Complaint sets forth broad allegations of hours worked that cannot be tied to any specific work week. Plaintiffs start their broad and unsubstantiated list of facts about individual plaintiffs by simply stating that they worked for

6

defendants during various periods from early 2016 to January 2018.[1]  They go on to say that,

"Plaintiffs *typically* worked six days a week, without receiving one and one-half times their

effective hourly rates, despite working well in excess of forty hours per week." *Id.*  Plaintiffs

then attempt to substantiate these claims with details of each plaintiffs' work schedule but fail to

actually provide any specific detail about any given week.  Plaintiffs' allegations start off each

individual claim by stating the approximate month they started and ended work, never stating an

exact day,  i.e. "Jimenez worked at the Serviam Heights Project as a painter beginning in or

about August 2017 until in or about January 2018."[2]  "Salas was employed by the Defendants at

the Serviam Heights Project as a taper and painter from in or about October 2017 until in or

about December 2017."[3]  Plaintiffs then try to give the specifics but repetitively fail to supply the

exact dates worked and sometimes the hours, "Jesse Brown was paid $10.00 per hour in cash

(i.e., $80 for an 8-hour day) for work he performed at the Serviam Heights project."[4]  In some

instances, not only were exact weeks not given but the hours alleged to have been worked did not

add up to 40 hours or more, "Sanchez worked five days per week, from 7:00 a.m. to

approximately 3:00 p.m."[5]  By not including the number of days for any specific week, nor the

exact hours plaintiff's claims do not meet the specified required under Lundy and invite to much

speculation as to how many days and hours a plaintiff worked during a given week. The

pleadings in this case leave too much speculation for what days and hours were actually worked

for any given week.

---

[1] See Amended Complaint at paragraph "121" [Dkt76].
[2] See Amended Complaint at paragraph "124" [Dkt76].
[3] See Amended Complaint at paragraph "178" [Dkt76].
[4] See Amended Complaint at paragraph "250" [Dkt76].
[5] See Amended Complaint at paragraph "150" and "151" [Dkt76].

As the plaintiffs have failed to satisfy their *Lundy* pleading requirements in amending their pleadings the First Cause of Action set forth in the Amended Complaint should be dismissed in its entirety.

B.  PLAINTIFFS' FIRST THROUGH FIFTH AND EIGHTH CAUSE OF ACTION FAIL TO STATE A CAUSE OF ACTION FOR OVERTIME WAGES VIOLATIONS, WAGE STATEMENT/NOTICE VIOLATIONS, DEDUCTIONS VIOLATIONS AND/OR SPREAD OF HOURS VIOLATIONS

The plaintiffs have failed to plead facts sufficient to demonstrate that either Cheever or Lonuzzi were the plaintiffs' "employer" under either the FLSA or NYLL.

As part of plaintiffs' burden, the Amended Complaint must lay a "factual foundation for determining the viability of their claims against Defendants, Cheever and Lonuzzi. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 2011 WL 321186, at *4 (S.D.N.Y. 2011), aff'd, 723 F.3d 192 (2d Cir. 2013).

Initially, it is noted that the plaintiffs aver to seek recovery against Defendant Lonuzzi both individually and in his capacity as owner and officer of Cheever. [6]  Confoundingly, the plaintiffs have not cited any cognizable theory or legal authority to support seeking recovery of any of the allege FLSA and/or prevailing wages from Defendant Lonuzzi personally as an "Owner" of Cheever.  Similarly, having failed to timely complied with the statutory prerequisites of New York Business Corporation Law § 630 requiring serving written notice prior to imposing personal liability on corporate shareholders, plaintiffs fail to cite any other authority to support seeking recovery of the alleges wages from Defendant Lonuzzi personally as a Shareholder.[7] *Isenberg v. H. Cotler Co., Inc.*, 1996 WL 131874 (S.D.N.Y. 1996).  Clearly, plaintiffs' claim for recovery against Defendant Lonuzzi personally as an "Owner" or "Shareholder" must be dismissed as a matter of law.

---

[6] See Amended Complaint at paragraph "28" [Dkt76].
[7] See Amended Complaint at paragraph "28" [Dkt76].

As a catch all the plaintiffs claim to seek recovery from Defendants Lonuzzi and/or Cheever as an "employer" and/or joint employer of the plaintiffs under the FLSA and NYLL. Plaintiffs, however, offer mere formulaic recitations, without more, in seeking to hold Defendants Lonuzzi and/or Cheever liable as the plaintiffs' "employer" under the FLSA and NYLL. The factual allegations upon which plaintiffs' claims rely are "Defendants shared common supervision of plaintiffs and with respect to the Projects, they have operated under central control" without more.[8] That Defendant Lonuzzi exercises sufficient control over Cheever's operations, and particularly its wage practices that affected Plaintiffs, without more. Plaintiffs' further claim in conclusory fashion that "as a matter of 'economic reality', Cheever and Lanuzzi were plaintiffs' joint employers and/or a unified single employer."[9]

When it comes to "employer" status under the FLSA, however, control is key." *Lopez v. Acme Am. Envtl. Co., Inc.*, 2012 WL 6062501, at *3 (S.D.N.Y. 2012); see also *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 135 (2d Cir. 1999)("[C]ontrol of employees is central to deciding whether appellant should be deemed an employer."). Under the NYLL, the standard for employer status is nearly identical to that of the FLSA. *Vasto v. Credico*, 2017WL4877424 *7 (S.D.N.Y. 2012). Accordingly, courts in this jurisdiction regularly apply the same tests to determine whether entities are joint employers under the NYLL and the FLSA. *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010).

In assessing "economic reality", the Second Circuit has articulated two tests for evaluating whether an employment relationship existed for the purposes of the FLSA: one relating to formal control and the other to functional control. *Vasto* at *6. The formal control test inquires "whether the alleged employer (1) had the power to hire and fire the employees, (2)

---

[8] See Amended Complaint at paragraph "34" [Dkt76].
[9] See Amended Complaint at paragraph "79" [Dkt76].

9

supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984).

The Functional control test inquires, (1) whether the alleged Defendants' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the Defendants or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the alleged employers. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

In apply the foregoing tests to the instant action it immediately becomes clear that the plaintiffs cannot satisfy either test as they indisputably allege that they were the employees of defaulting defendants, Sheer Taping and Eric Graves.[10]  In fact, plaintiffs alleged that defaulting Defendant, Eric Graves, purportedly operated in the shadows of the New York construction industry, with a track record of willfully and systematically underpaying (and/or failing to pay) laborers in violation of the FLSA, NYLL and/or prevailing wage requirements.[11]  The plaintiffs' continue by alleging that defaulting Defendant, Sheer Taping, egregiously underreported of the number of workers that it employed at the sites at issue in the instant action.[12]  Finally, plaintiffs admit that it was Defendant, Eric Graves, and/or his managers that paid the plaintiffs in cash; had plaintiffs sign (as a precondition for their continued employment) documents that purportedly

---

[10] See Amended Complaint at paragraph "79" [Dkt76].
[11] See Amended Complaint at paragraph "113" [Dkt76].
[12] See Amended Complaint at paragraph "95" [Dkt76].

authorized Defendant, Eric Graves, to deposit and/or cash the plaintiffs' checks; and engaged in unlawful "kick-backs" by demanding that workers sign the backs of checks that had dollar amounts which were far higher than the actual cash wages paid to plaintiffs.[13]  Plaintiffs allege that they provided and paid for their own tools of the trade.[14]

Other than raising certain formulaic and conclusory allegations citing terms of art, the plaintiffs have not and cannot allege any facts relating to any actual act on behalf of either Defendant Cheever or Lonuzzi that would render either the plaintiffs' employer.  Instead, plaintiffs rely upon such allegations as "Lonuzzi exercises sufficient control over Cheever's operations, and particularly its wage practices that affected plaintiffs, to be considered the "employer" of plaintiffs under the FLSA, NYLL at the Projects,[15] which is clearly contradicted by the specific allegation that Defendant, Eric Graves, and his and/or his managers that paid the plaintiffs, had plaintiffs sign documents that authorized deposit and/or cashing of the plaintiffs' checks and engaged in unlawful "kick-backs" by demanding that workers sign the backs of checks that had dollar amounts which were far higher than the actual cash wages paid to plaintiffs.[16]  There are absolutely no allegations in the original complaint or the Amended Complaint that either Defendant Lonuzzi or anyone on behalf of Cheever hired and fired any of the plaintiffs or supervised and controlled any of the plaintiffs' work schedules or conditions of employment.

Clearly, such formulaic recitations and baseless assertions of "legal conclusions" which are "devoid of further factual enhancement are not" entitled to the presumption of truth by this Court. *Iqbal*, 556 U.S. 662, 678 (quoting Twombly at 557).  Moreover, as the Court should note,

---

[13] See Amended Complaint at paragraph "117(d)" [Dkt76].
[14] See Amended Complaint at paragraph "122" [Dkt76].
[15] See Amended Complaint at paragraph "28" [Dkt76].
[16] See Amended Complaint at paragraph "117(d)" [Dkt76].

the only specious allegations raised by the plaintiffs that anyone on behalf of Cheever even interacted with the plaintiffs at all only relate solely to plaintiffs' civil RICO fraud claims (which will be addressed more fully below) alleging that Defendant Cheever's project manager, solely on the Bainbridge project at issue, engaged in some acts outside the scope of his employment in order to purportedly conceal and defraud certain individuals and entities with regard to prevailing wages on the Bainbridge project.

In light of the plaintiffs' failure to proffer more than unadorned legal conclusions and a formulaic recitation of the elements of their causes of action, the plaintiffs' First, Second, Third, Fourth Fifth and Eight causes of action should be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### C. PLAINTIFFS' SIXTH CAUSE OF ACTION FAIL TO STATE A CAUSE OF ACTION FOR ALLEGED UNJUST ENRICHMENT

To state a claim for recovery in quantum meruit the plaintiffs must have sufficiently alleged "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir.2005). While the Defendants clearly and vigorously dispute that the plaintiffs have or can satisfy the first three factors of the quantum meruit test, the plaintiffs claim for quantum meruit must be dismissed because plaintiffs have failed to plead the reasonable value of their services, a necessary element. *Liddle & Robinson, LLP v. Garrett*, 2010 WL 2628656, *4 (S.D.N.Y. July 1, 2010).

It is further noted that Plaintiffs' Sixth cause of action alleges that the Defendants have been unjustly enriched to the detriment of plaintiffs as a result of having purportedly engaged in a coordinated scheme to deprive the plaintiffs of wages and supplements that were required by

law and contracts.  To the extent that the plaintiffs intended to reference the prevailing wages

and supplements that were required under the Davis Bacon Act and the prime contracts entered

into by Cheever, such reliance also fails as it is well settled New York law that the existence of a

valid and enforceable written contract governing a particular subject matter precludes recovery in

quasi contract for events arising out of the same subject matter. *Clark–Fitzpatrick, Inc. v. Long

Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987).

In light of the foregoing, plaintiffs' Sixth cause of action must be dismissed.

### D. PLAINTIFFS' SEVENTH CAUSE OF ACTION FAIL TO STATE A CAUSE OF ACTION FOR ALLEGED CIVIL RICO VIOLATIONS

The plaintiffs' civil RICO claim is nothing more than FLSA and Davis Bacon Act claims

for unpaid wages with a more menacing label.  Fortunately, the FLSA and Davis Bacon Act 's

comprehensive remedial schemes preempt RICO claims that are based on the same facts.

*Norman v. Niagara-Mohawk Power Corp.*, 873 F.2d 634 (1989).

The Southern District of New York held in *Petras v. Johnson*, 1993 WL 228014, *2

(S.D.N.Y. June 22, 1993), "[c]ourts have consistently held that [section 216(b) of the FLSA] is

the exclusive remedy for enforcing rights created under the FLSA."  Similarly, in *Livingston v.

Shore Slurry Seal, Inc.*, 98 F. Supp. 2d 594, 600-02 (D.N.J. 2000), the court dismissed a RICO

claim based on an alleged violation of the Davis-Bacon Act because "the detailed administrative

scheme created by the Davis-Bacon Act is the exclusive remedy for the alleged underpayment of

wages for work performed on federal construction projects."  In *Danielsen v. Burnside-Ott

Aviation Training Ctr.*, the claims of employees of a naval contractor brought an action under

RICO were dismissed as they alleged they were not paid prevailing wages. *Danielsen*, 941 F.2d

1220 (D.C. Cir. 1991).

*Norman* and its progeny stand for the principle that "where a statute provides an exclusive remedy, concurrent RICO claims based on the same conduct should be dismissed." *Eldred v. Comforce Corp.*, 2010 WL 812698, *10 (N.D.N.Y. 2010). The FLSA and Davis Bacon Act are just such comprehensive remedial statutes that preempt Plaintiffs' civil RICO claims.

In the instant action, the plaintiffs' substitution of a RICO claim, based on the same facts as their FLSA claims, and their withdrawn Davis Bacon Act claims, is nothing more than an attempt to avoid the exhaustion of administrative remedies requirement by the Davis Bacon Act's administrative remedial scheme and to obtain remedies, including treble damages, which are unavailable outside of the FLSA and or Davis Bacon Act's administrative remedial scheme.

Plaintiffs Amended Complaint also fails as a result of the plaintiffs' failure to plead the circumstances of the alleged fraud purportedly committed by Defendants Cheever and/or Lonuzzi with particularity. To survive dismissal, each of these elements must be supported by allegations that meet Rule 9(b)'s particularity standard. *McNamara v. City of New York*, 2007 WL 1062564, *3 (E.D.N.Y. March 30, 2007). Indeed, "Rule 9(b)'s heightened particularity requirement [has] special urgency in civil RICO actions, due to the intrinsically vague nature of RICO claims and the significant fairness interest in ensuring defendants adequate notice of the charges brought against them." *Procapui-Productores de Camaroes de Icapui Ltda. v. Layani*, 2008 WL 3338199, *3 (S.D.N.Y. Jan. 11, 2008).

Moreover, "[w]here there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud." *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 639 (E.D.N.Y. 2003). A complaint "sounding in fraud may not rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding the alleged fraud." *McNamara*, 2007

WL 1062564, *4. Thus, "Rule 9(b) is not satisfied where the complaint vaguely attributes alleged fraudulent acts and/or statements to 'defendants'," without specifying which defendant committed each act or made each statement. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

In *Alnwick*, the court held that a complaint that "lump[ed defendants] . . . together and fail[ed] to specify what each defendant said" failed to satisfy Rule 9(b). 281 F. Supp. 2d at 640. In *Conte*, the Court found it fatal that the complaint contained "few, if any, factual allegations connecting any of the defendants to the alleged acts of mail and wire fraud," and failed to "identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed." *Conte v. Newsday, Inc.*, 2010 WL 1257887, *6 (E.D.N.Y. 2010). In *McNamara*, the court held that the complaint failed to satisfy Rule 9(b)'s particularity requirement because it "merely accuse[d] handfuls of defendants of engaging in an alleged enterprise without identifying each defendant's role in and relationship to the enterprise." 2007 WL 1062564, *4. The same rationale applies with greater force here, where plaintiffs have made no effort to particularize their allegations with respect to any of the non-defaulting named defendants from whom they now seek to recover.

To the extent that the plaintiffs argue that their claims are not subject to the heightened pleading requirements of Rule 9(b), they would still fail to meet the pleading requirements of Rule 8(a). To satisfy a Rule 8 claim plaintiff must provide, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.8(a)(2). The purpose of this is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial. *Strunk v. United States House of Representatives*, 68 Fed. Appx. 233, 235 (2d Cir. 2003). In order to comply with Rule 8, "[a] complaint should offer 'specification' as to the

'particular activities by any particular defendant . . . .'" *Am. Sales Co. v. Astrazeneca AB*, 2011

WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) (citing *In re Elevator Antitrust Litig.*, 502 F.3d 47,

50 (2d Cir. 2007)). "Rule 8(a) also requires that a complaint against multiple defendants indicate

clearly the defendants against whom relief is sought and the basis upon which the relief is sought

against the particular defendants." *Martin v. City of New York*, No. 07 Civ. 7384 (DC), 2008 U.S.

Dist. LEXIS 33946, 2008 WL 1826483, at 1 (S.D.N.Y. Apr. 23, 2008).

     In the instant action the plaintiffs have failed to state specific allegations against each

named defendant individually or identify what basis they were seeking recovery from the named

defendants so as to put them on adequate notice.  Instead plaintiffs simply refer to them

collectively as "defendants" then go on to describe certain purported fraudulent schemes and/or

kickback schemes.[17]  The courts have consistently held that such allegations are not sufficient. In

*Marcilis v. Twp. Of Redford*, the 6th Circuit affirmed the dismissal of claims because the

plaintiffs' complaint, "failed to allege the personal involvement of [Doyle or Livingston] so as to

inform [Doyle or Livingston] of the constitutional violations being specifically asserted against

them. *Marcilis*, 693 F.3d 589, 596 (6th Cir. 2012).  In *Atuahene v. City of Hartford*, the Second

Circuit affirmed the dismissal of a complaint as insufficient as it, "[failed] to identify which

defendants were alleged to be responsible for which alleged violations." *Atuahene*, 10 Fed.Appx.

33, 34 (2d Cir. 2001). Furthermore, in *Atuahene*, the Second Circuit ordered a dismissal and not

an amendment since plaintiffs had already been given several opportunities to correct their flaws

yet still left their allegations broad. *Id*. Similarly, Plaintiffs in the present case have failed to

specifically allege the actions of each individual defendant as to put them on notice. Plaintiffs

have already received leave to amend the complaint yet still leave their allegations broad, for this

---

[17] See Amended Complaint at paragraph "339" through "347" [Dkt76].

reason the court should dismiss the complaint.

In light of the foregoing, the plaintiffs' Seventh cause of action must be dismissed.

II.       **THE COMPLAINT FAILS TO STATE ANY ACTIONABLE OR SPECIFIC FACTS TO RAISE ANY CLAIMS AGAINST LIBERTY MUTUAL INSURANCE COMPANY**

A. **PLAINTIFFS' NINTH CAUSE OF ACTION FAIL TO STATE A CAUSE OF ACTION BOND ENFORCEMENT**

Unlike the Davis Bacon Act and other federal labor and wage statutes, the Miller Act was not designed with the welfare of workers in mind, but was instead tailored to protect suppliers and subcontractors. *Castro v. Fidelity and Deposit Company of Maryland*, 39 F.Supp.3d 1 (D.D.C 2014). In fact, in the Supreme Court's reading, the Miller Act "exclude[s] ordinary laborers" from its scope, only extending to those "who perform[ ] for and take[ ] from the prime contractor a specific part of the labor or material requirements of the original contract." *Clifford F. MacEvoy Co. v. U.S. ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 109, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). As such, the payment bonds obtained by Cheever and issued by Liberty do not cover the plaintiffs' FLSA, New York Labor Law and/or common law claims in this action as the plaintiffs clearly attested to the fact that they were employed by defaulting Defendants Sheer Taping and Eric Graves as laborers performing work required of Sheer Taping's subcontract.[18]

It is also noted that the payment bonds, obtained by Cheever and issued by Liberty, contain a condition precedent to the commencement of any action seeking recovery under the respective bonds that the plaintiffs furnish written notice of non-payment to Cheever, stating with substantial accuracy the amount claimed and the name of the party whom the labor was performed within ninety (90) days after having last provided the labor included in the claim.[19]

---

[18] See Amended Complaint at paragraph "79" [Dkt76].
[19] See paragraph 5.1.1 of the Payment Bonds issued by Liberty which have been submitted herewith as Exhibits "2" and "5".

In the instant action, there is no dispute that the plaintiffs failed to serve the required written notice pursuant to section 5.1.1 of the respective payment bonds.

Lastly, a claim to recover Davis-Bacon Act wages on a Miller Act bond cannot proceed without an administrative determination that a Davis-Bacon Act violation occurred and that there are insufficient funds remaining on the contract to satisfy the plaintiffs' claims. In *United States ex rel. Krol v. Arch Insurance Co.,* 46 F.Supp.3d 347 (S.D.N.Y 2014). In the instant action, plaintiffs' have not obtained administrative determination that any prevailing wages or supplemental benefits are due, nor have they even alleged that there are insufficient funds remaining on the contract to satisfy the plaintiffs' claims.

In light of the foregoing, the plaintiffs' Ninth cause of action must be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court dismiss the Third Amended Complaint in its entirety, and award to the Defendants such other and further relief as the Court deems appropriate, including their attorneys' fees and costs.

Dated: Uniondale, New York
July 30, 2018

                                          /s/
                               _____
                               Frank W. Brennan, Esq.
FORCHELLI DEEGAN TERRANA LLP
*Attorneys for Defendants*
Cheever Development Corp., Matthew Lonuzzi
and Liberty Mutual Insurance Company
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
(516) 248-1700